IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEVIN WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:13-cv-523-NJR-DGW |
| ) | |
| ) | |
| DONALD GAETZ and VIPIN SHAH, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendant Gaetz (Doc. 23) be **DENIED**, and that the Court adopt the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

Plaintiff, a chronic asthmatic who is currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brought this Section 1983 action alleging that Defendants were deliberately indifferent to his medical condition. After an initial screening pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on one count against Defendants Gaetz and Shah for deliberate indifference to his serious medical needs (Doc. 10). The Court notes that Plaintiff was

allowed to proceed against Defendant Gaetz only in his official capacity for purposes of injunctive relief.

Defendant Gaetz filed a Motion for Summary Judgment on the Issue of Exhaustion (Doc. 23). Based on the affidavit of Debbie Knauer, Chairperson of the Administrative Review Board ("ARB"), Defendant claims that the ARB responded to one grievance filed by Plaintiff regarding the confiscation of his inhaler and denial of a new inhaler. Ms. Knauer's affidavit states that the confiscation of Plaintiff's inhaler was beyond the timeframe for review and, therefore, the ARB only provided a final determination on the merits concerning Defendant Shah's refusal to issue an inhaler. Further, in his Motion, Defendant asserts that Plaintiff's grievance was inadequate because it failed to specifically address Defendant Gaetz, or any policy implemented by him. Plaintiff did not respond to Defendant's Motion for Summary Judgment. However, attached to Plaintiff's Complaint was the grievance he filed related to this lawsuit, as well as the ARB's response. These documents were also included as exhibits with Defendant's Motion for Summary Judgment.

### *Pavey Hearing*

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court held a hearing on the issue of exhaustion on June 24, 2014. At the hearing, Defendant again asserted that Plaintiff's grievance regarding this lawsuit was deficient as to Defendant Gaetz. Specifically, Defendant argued that Plaintiff only exhausted his administrative remedies with regards to Defendant Shah's denial of an inhaler, not the confiscation of Plaintiff's inhaler. As to the denial of an inhaler, Defendant argued that Plaintiff's grievance was deficient as to Defendant Gaetz because Plaintiff did not specifically name Defendant Gaetz, or address a policy implemented by

Gaetz or the Illinois Department of Corrections ("IDOC") in his grievance. This portion of the grievance states, in part, that "[e]ven after telling Dr. Shah that my inhaler was confiscated and that I was in need of one, he told me that I would have to wait six months for one … There's a 6-18 months waiting period for clothing reissue, is there also a 6 month waiting period for inhalers?" (Doc. 24-1, pp. 6-7). When questioned by the Court as to why Plaintiff's statements regarding a six month waiting period for an inhaler were not related to a policy of the IDOC, Defendant asserted that any policy mentioned in Plaintiff's grievance was a policy of Wexford Health Sources, Inc. ("Wexford"), the company under contract with the IDOC to provide health care services to inmates at Pinckneyville. Defendant was not able to articulate why a policy of Wexford is not imputed to the IDOC or Defendant Gaetz.

## CONCLUSIONS OF LAW

*Legal Standards*

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an

essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

> The Prison Litigation Reform Act provides:
>
> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place,

and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. §504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* § 504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become

"unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

*Discussion*

Defendant Gaetz, as the warden of Pinckneyville, is a defendant in this action only in his official capacity for purposes of injunctive relief. As such, Plaintiff need not specifically name Defendant Gaetz, or specifically mention any wrongdoing of Defendant Gaetz, in his grievance. However, Plaintiff must identify an official policy or widespread custom at Pinckneyville that caused his alleged constitutional violation, deliberate indifference to serious medical needs, in order to fulfill his exhaustion requirements against Defendant Gaetz. *See King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012) (quoting *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008)).

With respect to Dr. Shah's refusal to issue a rescue inhaler, it is undisputed that Plaintiff filed a grievance regarding this occurrence in April, 2012. It is further undisputed that Plaintiff exhausted his administrative remedies as to this occurrence, as the ARB provided a final

determination on this incident. As mentioned above, this portion of the grievance states, in part, that "[e]ven after telling Dr. Shah that my inhaler was confiscated and that I was in need of one, he told me that I would have to wait six months for one … There's a 6-18 months waiting period for clothing reissue, is there also a 6 month waiting period for inhalers? … who would be responsible for this?" (Doc. 24-1, pp. 6-7). The Court notes that, in response to this grievance, Plaintiff's counselor stated that "Wexford's policy is to issue emergency/rescue inhalers once every 6 months" (Doc. 24-1, p. 6). Based on this language, it is clear that Plaintiff was grieving not only Dr. Shah's refusal to issue him an inhaler, but also the *policy* regarding the issuance of inhalers.

Although Defendant argues that the policy regarding inhalers was Wexford's policy, the Court finds that this policy is, in effect, a policy of the IDOC that was implemented at Pinckneyville. The Seventh Circuit has held that a governmental entity cannot shield itself from Section 1983 liability by contracting out its duty to provide medical services. *See King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012). This rationale is based on the fact that the private company's policy becomes that of the government if the government delegates final decision-making authority to the private company. *Id.* In this case, Defendant has indicated that Wexford is a private company that has contracted with the IDOC to provide medical care to prisoners at Pinckneyville. Further, there is no indication that Wexford was not provided with final decision-making authority with regards to the policy at issue here. As such, the rationale of *King v. Kramer* is applicable to the circumstances of this case and, based on the evidence presented, the policy regarding the issuance of inhalers is imputed to the IDOC. Therefore, Plaintiff properly exhausted his remedies as to Defendant Gaetz in regards to this claim.

### RECOMMENDATIONS

Therefore, based on all of the foregoing, it is hereby **RECOMMENDED** that the Motion for Summary Judgment filed by Defendant Gaetz (Doc. 23) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: July 10, 2014**

**DONALD G. WILKERSON**
**United States Magistrate Judge**