IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KEVIN WILLIAMS,** | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| vs. | )  Case No. 13-CV-523-NJR-DGW |
| | ) |
| **VIPIN SHAH and DONALD GAETZ,** | ) |
| | ) |
|       **Defendants.** | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Before the Court are Motions for Summary Judgment filed by Defendant Vipin Shah (Doc. 48) and Defendant Tom Spiller[1] (Doc. 51) on December 5, 2014. For the reasons set forth below, the Motions are granted.

## INTRODUCTION

Plaintiff Kevin Williams, an inmate in the custody of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. In his Complaint, Plaintiff named as defendants Dr. Vipin Shah, Warden Donald Gaetz (in both his official and individual capacity) and Health Care Unit Administrator Christi Brown (in both her individual and official capacity) (Doc. 1). Following the Court's initial screening, Plaintiff was allowed to

---

[1] Donald Gaetz, the former warden of Pinckneyville Correctional Center, was sued in this case in his official capacity. Since the commencement of this case, Tom Spiller has assumed Defendant Gaetz's position as warden of Pinckneyville, and he is therefore substituted under Federal Rule of Civil Procedure 25(d).

proceed against Defendant Shah on one claim of deliberate indifference in violation of the Eighth Amendment. Specifically, Plaintiff complains that upon his arrival at Pinckneyville in January 2012, his rescue inhaler was confiscated, and Defendant Shah refused to issue him another inhaler, although he is a chronic asthmatic. As a result of not having an inhaler, Plaintiff alleges that in March 2012, he suffered an asthma attack and had to use the panic alarm in his cell to receive treatment. Plaintiff further contends that after this incident he again requested an inhaler from Defendant Shah, but he was informed he would have to wait six months to receive one. Just two days later, Plaintiff claims he had to again be treated for an asthma attack. Defendant Gaetz is named as a defendant only in his official capacity for purposes of injunctive relief (*see* Doc. 10).

Defendant Shah has moved for summary judgment asserting that Plaintiff cannot, as a matter of law, establish that he was deliberately indifferent to Plaintiff's medical needs (Doc. 48). Defendant Spiller has also filed a Motion for Summary Judgment, arguing that his continued participation in this litigation is not necessary for injunctive relief against Pinckneyville (Doc. 51). Plaintiff has not filed a response to Defendants' Motions, despite having adequate notice (*see* Docs. 52 and 53).

## BACKGROUND

Prior to his transfer from Menard Correctional Center ("Menard") to Pinckneyville on January 18, 2012, Plaintiff was issued an Albuterol inhaler and QVAR inhaler for his chronic asthma (Plaintiff's Complaint, Doc. 1, p. 5; Plaintiff's Deposition, Doc. 49-2, p. 26)[2]. Plaintiff used his inhalers about three times per day while at Menard

---

[2] During his deposition, Plaintiff testified that while he was at Menard in 2011, he was seen by Defendant Shah who prescribed him Albuterol and QVAR inhalers (Doc. 49-2, pp. 24-26); however, Defendant Shah

to control his asthma (Doc. 49-2, p. 27). During his initial intake at Pinckneyville, it was noted that Plaintiff's current medications were Albuterol and QVAR inhalers (Plaintiff's Health Status Transfer Summary, Doc. 49-3, p. 13). At his deposition, Plaintiff testified that the day after he arrived at Pinckneyville, he was seen by Defendant Shah. Defendant Shah allegedly took his inhalers to examine them, but failed to return them or provide him with new inhalers (Doc. 49-2, p. 30). Plaintiff submitted sick call requests to Defendant Shah over the course of the next three or four weeks asking about his inhalers, but claims he was never called to the health care unit and never received an inhaler (*Id.* at 30).

Plaintiff testified that he saw Defendant Shah approximately three weeks after his initial intake. Defendant Shah told Plaintiff he had a prescription to get an inhaler, and he would receive one (Doc. 49-2, pp. 34-36). Plaintiff did not receive an inhaler after this examination and, upon making further requests for an inhaler, Plaintiff was told by unknown nurses that it was up to Defendant Shah and that it could take up to six months to receive an inhaler (*Id.* at 36). Plaintiff subsequently saw Defendant Shah again after approximately four or five months. Defendant Shah indicated that it would not take six months to receive an inhaler, and Plaintiff had a prescription to get an inhaler, but Defendant Shah did not provide him with an inhaler at that time (*Id.* at 34-35).

Plaintiff was seen by a nurse at Pinckneyville to monitor his chronic asthma approximately once a month (*Id.* at 37). Specifically, Nurse Angel Rector regularly saw

---

was the Pinckneyville Medical Director at the time of this alleged treatment (Affidavit of Dr. Vipin Shah, Doc. 49-1, ¶ 3). Accordingly, the Court finds that Plaintiff is mistaken as to the identity of the medical professional who monitored his asthma while at Menard.

Plaintiff and told him that he needed to have an inhaler and that he was on the list to receive one (*Id.* at 36-37). The nurses Plaintiff saw for his asthma indicated that they wanted to give him an inhaler, but they had to go through procedures and talk to Defendant Shah (*Id.* at 48-49). Plaintiff further testified that he thinks Defendant Shah was trying to get him an inhaler, but the six month policy instituted by Wexford, the private entity that contracts with the IDOC to provide health care services, prevented him from issuing it (*Id.* at 50). Aside from his regular visits to monitor his asthma, Plaintiff testified that he never had an issue with his asthma that required him a visit to the health care unit or required hospitalization (*Id.* at 38-39). Plaintiff testified, however, that about two times per week he experiences an asthma attack, breathes into a bag, and drinks coffee to regulate his breathing (*Id.* at 59-60).

Although Plaintiff's testimony is somewhat unclear, he indicated that he first received an inhaler while at Pinckneyville in 2012 or 2013, and subsequently received two refills (Doc. 49-2, p. 45). On the date of his deposition in October 2014, however, it had been approximately eight months since he had received his last refill (*Id.*). According to Plaintiff's medical records, Defendant Shah prescribed Plaintiff a Ventolin[3] inhaler on February 14, 2012, to use every six hours as needed to control his asthma (Plaintiff's Medication Administration Record, Doc. 49-3, p. 52). Defendant Shah is not responsible for ensuring a prescription is filled once prescribed (Dr. Shah's Affidavit, Doc. 49-1, ¶ 5).

---

[3] Ventolin is a brand name for Albuterol; it is a short-acting beta agonist used to treat asthma as needed (Dr. Vipin Shah's Affidavit, Doc. 49-1, ¶ 6).

There is no other documentation in Plaintiff's medical records pertaining to any treatment provided by Defendant Shah. The records note that his asthma was regularly monitored in the asthma chronic clinic, approximately three times per year (*see* Plaintiff's Medical Records, Doc. 49-3, pp. 16, 18, 22, 23, 28, 35, and 37). During these examinations, Plaintiff's condition was described as "intermittent" and in "good control" (*Id.*). It was never noted that Plaintiff had difficulty conducting normal activities (*Id.*). Plaintiff's medical records document certain occasions when it was noted that Plaintiff did not have an inhaler. Specifically, Plaintiff indicated he did not have an inhaler on June 13, 2012, June 17, 2013, August 6, 2013, and October 15, 2013 (*Id.* at pp. 18, 28, 29, 35). On August 8, 2013, Plaintiff was seen in the health care unit by Nurse Rector who evaluated his need for a new inhaler (*Id.* at 30). Plaintiff had been overusing his inhaler and was instructed on appropriate inhaler use (*Id.*). It was further noted that Plaintiff had not been to the health care unit for any breathing problems (*Id.*). Plaintiff's medical records do not evidence any other instance when Plaintiff specifically complained about not having an inhaler.

## LEGAL STANDARD

### A. *Summary Judgment Standard*

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material

facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of a nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted).

### B. Eighth Amendment and Deliberate Indifference

Deliberate indifference to an inmate's serious medical needs may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail on such a claim, the plaintiff must show first that his condition was "objectively, sufficiently serious" and, second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of

chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessary for a doctor's attention.").

As to the second showing, an inmate must show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104. This standard is less demanding than purposeful infliction of pain, but it is more than ordinary medical malpractice. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). The plaintiff must demonstrate that the officials were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inferences from circumstantial evidence… and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). A prisoner who receives some treatment can still establish deliberate indifference, so long as the treatment received is "blatantly inappropriate." *Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011). A plaintiff need only show that the defendant's responses were so plainly inappropriate as to permit the

inference that the defendant intentionally or recklessly disregarded his needs. *Hayes*, 546 F.3d at 524.

## DISCUSSION

Pursuant to Local Rule, a party's failure to file a timely response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion. SDIL-LR 7.1(c). Rule 56(e) of the Federal Rules of Civil Procedure also provides that if a party fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion or grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it. In this case, Plaintiff has not filed a response to either of the Defendant's motions for summary judgment, although he was properly notified of his responsibility to do so (*see* Docs. 50 and 53), and was given ample time and opportunity. Accordingly, although the Court reviews the facts set forth by Defendants in the light most favorable to Plaintiff, such facts are considered to be undisputed.

### A. *Defendant Shah's Motion for Summary Judgment*

Based on the evidence presented at this stage of the litigation, the Court finds that Plaintiff has not made his *prima facie* case demonstrating Defendant Shah violated his constitutional rights. Defendant Shah does not explicitly contest that Plaintiff has a made a sufficient showing under the objective inquiry that his asthma condition constituted a "serious medical need." The Court finds Plaintiff's allegations that he suffers from chronic asthma that flares up and requires him to breath into a bag approximately two times per week may constitute a serious medical condition. *See*

*Hayes*, 546 F.3d at 522-23. Plaintiff fails, however, to demonstrate that Defendant Shah acted with deliberate indifference to his medical condition.

At summary judgment, the burden is on the moving party to establish that no genuine issue of material fact exists to submit to a jury or that the moving party is entitled to judgment as a matter of law. The only allegation in Plaintiff's Complaint is that Defendant Shah refused, on various occasions, to issue Plaintiff an inhaler to control his asthma. Defendant Shah argues he is entitled to summary judgment on three bases: (1) he was not deliberately indifferent to Plaintiff's medical needs; (2) Plaintiff cannot demonstrate he sustained "substantial harm;" and (3) he is entitled to qualified immunity.

Defendant Shah contends that he was not deliberately indifferent to Plaintiff's medical needs as the only competent evidence he ever provided any treatment whatsoever for Plaintiff is a prescription note dated February 14, 2012, indicating he prescribed Plaintiff a Ventolin inhaler. Defendant Shah argues that the Court should discount Plaintiff's deposition testimony concerning Defendant's treatment as his testimony contradicted many allegations in Plaintiff's Complaint. Further, Defendant Shah argues that Plaintiff's complaints regarding his inhaler arise from his overuse and abuse of the medication.

The Court acknowledges that portions of Plaintiff's testimony contradict allegations in Plaintiff's Complaint; however, Plaintiff's Complaint is not evidence, as it has not been verified and attested to by Plaintiff. As such, the Court will not discount Plaintiff's testimony regarding Defendant Shah's treatment.

The evidence provided by Defendant Shah, when viewed in a light most favorable to Plaintiff, establishes that after his transfer to Pinckneyville from Menard in January 2012, Plaintiff's Albuterol and QVAR inhalers were taken away. The evidence further shows that, although Defendant Shah assured Plaintiff his inhalers would be returned, they were not. On February 14, 2012, Defendant Shah prescribed Plaintiff a Ventolin inhaler, which Plaintiff apparently never received; however, it is not Defendant Shah's responsibility to ensure that prescribed medications are issued to inmates. Over the next few months, Plaintiff saw Defendant Shah twice, and he advised Defendant Shah he still needed an inhaler. Also during this time Plaintiff wrote numerous grievances asking for an inhaler, but to no avail.

Approximately three to four weeks after his transfer to Pinckneyville, Plaintiff was told by Defendant Shah that he had a prescription to get an inhaler, but again, he did not receive it. Plaintiff still had not received his inhaler four or five months after arriving at Pinckneyville, although Defendant Shah reiterated he had a prescription for it. At some point in 2012 or 2013, Plaintiff was issued an inhaler and two subsequent refills. Defendant Shah further established that while at Pinckneyville, Plaintiff was regularly examined by a nurse at the chronic asthma clinic. Plaintiff's asthma was noted as being well controlled and intermittent. Further, Plaintiff's asthma never required hospitalization.

Based on this evidence, it is apparent that Defendant Shah did not have the requisite knowledge to infer that his actions posed a substantial risk of serious harm to Plaintiff. Rather, the evidence tends to show that Plaintiff's asthma was well-controlled

even without the use of an inhaler and that Defendant Shah did in fact prescribe Plaintiff an inhaler shortly after his arrival at Pinckneyville. And even if Plaintiff did not always receive his inhaler or a refill for his inhaler immediately upon request, a prisoner is not entitled to receive "unqualified access to health care." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). More specifically, a plaintiff is not entitled to demand specific care or the best care possible. *Johnson*, 433 F.3d at 1013.

Plaintiff's asthma was regularly monitored, and the record is devoid of any evidence suggesting Plaintiff's asthma was not well-controlled while he was at Pinckneyville. Importantly, there is no evidence that Defendant Shah had any knowledge that Plaintiff's asthma was not well-controlled, even without the use of an inhaler. Although Plaintiff wanted unfettered access to asthma inhalers, the evidence does not demonstrate that delay in receiving any such inhaler caused him any harm or put him at risk of any harm. In sum, after considering the facts in the light most favorable to Plaintiff, the Court finds that there is no genuine issue of material fact that Defendant Shah was deliberately indifferent to Plaintiff's medical needs. Accordingly, Defendant Shah is entitled to summary judgment on Plaintiff's claim of deliberate indifference.

The Court need not consider the issue of qualified immunity because it has already concluded that the evidence, when viewed in a light most favorable to Plaintiff, does not establish a genuine issue of fact as to whether Defendant Shah violated his Eighth Amendment rights.

### B. *Defendant Spiller's Motion for Summary Judgment*

Defendant Spiller contends in his Motion for Summary Judgment that (1) he is not a proper party to this lawsuit, as Plaintiff did not allege any personal wrongdoing on his part, and (2) he is not an appropriate official for carrying out injunctive relief. As stated in the Court's screening order, Defendant Spiller is named as a defendant in this lawsuit for the sole purpose of carrying out injunctive relief (Doc. 10, p. 5). Although Seventh Circuit precedent clearly indicates that Defendant Spiller is a proper party to effectuate any possible injunctive relief as the warden of Pinckneyville, *see Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011), he is entitled to summary judgment at this juncture because Plaintiff's deliberate indifference claim against Defendant Shah is dismissed with prejudice.

### CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment (Doc. 48) filed by Defendant Shah and the Motion for Summary Judgment filed by Defendant Spiller (Doc. 51) are **GRANTED**. This action is hereby **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff.

**IT IS SO ORDERED.**

DATED: July 6, 2015

s/ Nancy J. Rosenstengel  
NANCY J. ROSENSTENGEL  
**United States District Judge**